UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RSR CORPORATION, et al.,<br><br>　　　　　　　Defendants. | CASE NO. C00-890JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a slew of motions in limine from Defendants RSR Corporation ("RSR"), Quemetco, Inc. ("Quemetco"), and Quemetco Realty, Inc. ("Quemetco Realty") (Dkt. ## 102-106) and the United States ("Government") (Dkt. ## 96, 98-100). After considering the parties' briefing and supporting documentation, the court GRANTS and DENIES the motions as stated below.

## II. BACKGROUND

The court has summarized the factual background of this action in previous orders. Other than a dispute over whether Defendants are "operators" (as CERCLA defines the term) of the lead smelter in question, Defendants' liability is no longer in dispute. It appears that the focus at trial will be Defendants' efforts to show that the Government has

ORDER – 1

inaccurately assessed the costs it seeks to recover, and to establish affirmative defenses that may reduce the amount that the Government can recover. These motions center on witnesses and evidence the parties will use to address those issues at a bench trial beginning October 17, 2005.

### III.  ANALYSIS

**A.     The Parties' Motions to Exclude Expert Testimony Are Premature.**

**1.     The Parties Have Failed to Consider the Differences Between Offering Expert Testimony in a Bench Trial and a Jury Trial.**

In six of the nine motions before the court, the parties argue for at least partial exclusion of testimony from various expert witnesses. In each of the six motions, the parties repeat the standards for admission of expert testimony from Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and its progeny. Those cases establish a trial court's duty to sit as a "gatekeeper" to prevent a witness from misleading the jury by offering unreliable testimony cloaked in the aura of court-sanctioned expertise. See, e.g., id. at 596-97; Mukhtar v. Cal. State Univ., Hayward, 319 F.3d 1073, 1074 (9th Cir. 2003) (explaining "Daubert's requirement that *some* reliability determination must be made by the trial court *before* the jury is permitted to hear the evidence"), amending 299 F.3d 1053 (9th Cir. 2002). In a bench trial, the gatekeeper and the trier of fact are the same, raising the metaphysical question of how a trial court can simultaneously perform its gatekeeping function and keep unreliable expert testimony from itself.

Numerous courts have recognized that the Daubert mandate operates differently in a bench trial. E.g., Weber v. Eco-Adventures, Inc., No. 02-00596 ACK/BMK, 2004 U.S. Dist. LEXIS 27485, at *3-5 (D. Haw. Apr. 2, 2004) (citing cases); Volk v. United States, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999). While the court sitting as the trier of fact may not ignore the Daubert standards for assessing the reliability of testimony, it need not

ORDER – 2

make those determinations before hearing the testimony. See <u>Jones v. United States</u>, 127 F.3d 1154, 1156 (9th Cir. 1997) (noting that district court had not ruled on <u>Daubert</u> motion until after the bench trial); <u>Gonzales v. National Bd. of Med. Examiners</u>, 225 F.3d 620, 635 (6th Cir. 2000). When the court sits as trier of fact, it has much greater flexibility to admit expert testimony and give it the weight to which it is entitled. As one court reasoned:

> Under <u>Daubert</u>, . . . the better approach in this bench trial is to admit the testimony of all of the recognized experts that it permitted to testify and, in the words of the Supreme Court, allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test 'shaky but admissible evidence.' [509 U.S. at 596.] . . . [T]he court's concerns about the usefulness of various portions of the scientific testimony more appropriately can be addressed through determination of the weight to be accorded the testimony, rather than through the threshold determination of admissibility.

<u>Fierro v. Gomez</u>, 865 F. Supp. 1387, 1395 (N.D. Cal. 1994), <u>vacated on other grounds by</u> 519 U.S. 918 (1996), <u>vacated on remand on other grounds by</u> 147 F.3d 1158 (9th Cir. 1998). The court finds this to be a prudent approach to carrying out the <u>Daubert</u> marching orders in a bench trial, and will adopt it in this action. If, after hearing a witness's testimony, the court finds that it falls short of the <u>Daubert</u> standards, the court will give it no weight.

**2.  The Court Will Permit the Testimony of Every Expert That the Parties Challenge, Subject to Later Consideration of Their Testimony Under <u>Daubert</u>.**

With these guidelines in mind, the court turns to the six motions challenging expert testimony. For the most part, the court denies these motions without prejudice to the parties renewing them after hearing from the experts at trial. To assist the parties, the court offers the following comments regarding its initial view of the admissibility of each expert's testimony.

ORDER – 3

The Government's motion to exclude the testimony of Dr. Richard Martin raises precisely the sort of question that is better, in a bench trial, to decide after hearing his testimony. Dr. Martin seeks to support Defendants' position that the court should allocate some of the response costs to another lead smelter on Harbor Island. The court will be better equipped to resolve the parties' debate over the validity of his estimates of the amount of lead the other smelter emitted after his testimony and cross-examination.[1]

The same comments apply to Defendants' motions to exclude the testimony of Steven Fuller and Wiley Wright. Mr. Fuller's testimony supports the Government's contention that it is impossible to divide response costs because of the commingling of all sources of lead pollution on Harbor Island. Although he offered other opinions in his expert report, the Government states that it will only rely on his opinion that lead from multiple sources was inextricably commingled on Harbor Island. Defendants argue that even if multiple sources of lead commingled at the SGOU, it is still possible to divide response costs. Even assuming the truth of this contention as a matter of fact or of law, it provides no basis for excluding Mr. Fuller's testimony. The court will hear his testimony, subject to later review under Daubert standards.

Mr. Wright is an accountant who prepared a report after auditing the Government's apportionment of costs between the SGOU and other operating units on Harbor Island. Defendants ask the court to exclude his testimony because after preparing his report, he deleted certain cost items upon reviewing his report in response to questioning at his deposition, and then provided a new report. Defendants insist that his

---

[1] The court denies Defendants' motion to strike the Government's motion regarding Dr. Martin. Although the Government's motion is overlong, and circumvents the court's rules regarding motions in limine, the court prefers to decide this matter on its merits. As the court has noted in previous orders, Defendants have also used improper tactics to circumvent the court's page limits.

ORDER – 4

report is untimely, but the court disagrees. Mr. Wright acted precisely as an expert should. Faced with new information regarding his opinions, he reconsidered, and offered an updated report that was identical to his original one but for his responses to the new information. Moreover, the court sees no reason that Mr. Wright's change in his report would disqualify his testimony under Daubert. Finally, Defendants object that Mr. Wright has no basis for assessing the validity of approximately $3 million in indirect response costs that the Government incurred at the SGOU. Mr. Wright admits as much in his expert report, but it does not appear to the court that the Government intends to rely on Mr. Wright to support its indirect costs figure.

The challenged testimony of Dr. Walter Shields barely passes the admissibility hurdle. Among other subjects, Dr. Shields will testify in support of Defendants' contention that the court should reduce the costs the Government seeks because they were incurred solely in responding to organic pollutants, not lead pollution. On the record before the court, Dr. Shields' methodology is suspect. To arrive at his calculations, Dr. Shields calculated the ratio of costs for analyzing organic pollutants to the costs of analyzing inorganic pollutants. He then applied this ratio to all costs the Government incurred at the SGOU, the majority of which have nothing to do with analysis. Dr. Shields will have to present a compelling basis for this extrapolation in order to clear the Daubert hurdle,[2] but the court will permit him to attempt to do so at trial.

---

[2] It appears that a portion of the parties' dispute over Dr. Shields' testimony relates to what standard Defendants must meet to establish the affirmative defense that the harm their smelter caused at the SGOU is divisible from other harms. Defendants implicitly contend that Dr. Shields' approximations are sufficient, whereas the Government contends that Defendants must meet a much higher standard of precision. The court has directed the parties to address the standard of proof for divisibility of harm in their trial briefs or other pretrial submissions, and expects that this will assist the court in determining whether to credit Dr. Shields' methodology and testimony.

ORDER – 5

The Government's motion to exclude Jeff Teitel, an environmental consultant and lawyer, is largely well taken. Mr. Teitel's "expert report" contains an argument regarding the Government's allocation of costs between the SGOU and the Sediment Operating Unit on Harbor Island. Mr. Teitel's report might have made for a compelling motion for summary judgment, but it has few of the hallmarks of an expert report. On the record before it, the court sees no reason to treat Mr. Teitel as an expert rather than an attorney. Although the court will permit Defendants to introduce his testimony at trial, the court will not permit him to opine on the law or to make a lawyer's arguments from the witness stand. Moreover, Mr. Teitel's qualifications as an "environmental consultant" do not appear, on the record before the court, to provide him with a basis for opining regarding the Government's cost accounting at the SGOU. As the Government points out, Mr. Teitel is not an accountant. Unless Mr. Teitel presents his trial testimony in a manner substantially different than in his expert report, his testimony will be very brief.

Finally, the court declines to exclude the testimony of Charles Young. He intends to testify in support of the Government's methodology for calculating indirect enforcement costs attributable to the SGOU. Defendants claim that he should not testify because he has no opinions based on the costs the Government is claiming. The Government disagrees. The court finds that the parties can better illuminate this dispute at trial.

**B.     The Court Denies Defendants' Remaining Motions.**

In two of the remaining motions, Defendants ask the court to exclude evidence without identifying the evidence they attack. One seeks the exclusion of evidence "not produced or disclosed." The court generally does not admit evidence that a party requested during discovery but did not receive. There are exceptions to this rule, but the court has no basis to consider their application here, as Defendants have pointed to no

ORDER – 6

specific evidence that the Government intends to introduce in violation of the rule. Defendants refer to the late-filed evidence the Government relied upon to avoid summary judgment on statute of limitations grounds, but the court has already noted that this evidence was available to Defendants (and the general public) in the administrative record for the SGOU, and has already relied on it in denying Defendants' summary judgment motion.

The second motion requests that the court bar testimony from Government witnesses whose deposition testimony conflicts with other discovery responses. Again, with one exception,[3] Defendants do not point to specific evidence. The court notes that, in general, impeachment on cross-examination is the remedy for a witness whose testimony is inconsistent with prior discovery responses. The court finds no basis for excluding the testimony rather than having Defendants employ this remedy.

**C.    The Court Grants the Government's Remaining Motion.**

The Government moves for leave to admit its summary of enforcement costs as a compilation of voluminous records under Fed. R. Evid. 1006. Defendants do not oppose the motion. The Government has shown that the summary meets the requirements of Rule 1006. The court therefore grants the motion.

## IV.  CONCLUSION

For the reasons stated above, the court grants and denies the motions before it as follows:

---

[3]The court addressed Defendants' objections to the allegedly inconsistent deposition testimony of the Government's Fed. R. Civ. P. 30(b)(6) representative in its prior summary judgment order, and declines to repeat that discussion here. To the extent the Defendants continue to insist that the representative improperly backed away from his testimony that certain actions at the SGOU were "remedial" rather than "removal" under CERCLA, the court's ruling on summary judgment moots the issue. The court also declines to address Defendants' judicial estoppel argument regarding this testimony, as they raised it for the first time in their reply brief.

ORDER – 7

The court DENIES the parties' motions targeting expert testimony (Dkt. ## 96, 98, 100, 102, 104, 105), subject to the court's discussion in this order and without prejudice to renewing the motions after hearing the experts' testimony at trial.

The court DENIES Defendants' remaining motions (Dkt. ## 103, 106).

The court GRANTS the Government's remaining motion (Dkt. # 99).

DATED this 4th day of October, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 8